# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ASIAN AMERICANS ADVANCING JUSTICE-CHICAGO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JESSE WHITE,<br>in his official capacity as the Illinois Secretary of State, and ILLINOIS STATE BOARD OF ELECTIONS,<br><br>Defendants. | Case No. 1:20-cv-01478 |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ILLINOIS STATE BOARD OF ELECTIONS' MOTION TO DISMISS

Plaintiffs Asian Americans Advancing Justice-Chicago, CHANGE Illinois, Chicago Votes Education Fund, Common Cause Illinois, Illinois Coalition for Immigrant and Refugee Rights, and Illinois Public Interest Research Group Education Fund ("Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendant Illinois State Board of Elections' ("ISBE") Motion to Dismiss Plaintiffs' Complaint.

## PRELIMINARY STATEMENT

Plaintiffs bring this case because Illinois' voter registration system violates the State's obligations under the National Voter Registration Act (the "NVRA"), Section 203 of the Voting Rights Act (the "VRA") and the Illinois Automatic Voter Registration law (the "AVR Statute"). (Docket No. 1 (hereinafter, "Compl.") ¶ 5; *see also id.* ¶¶ 43-56.) Plaintiffs are grassroots, non-partisan organizations focused on voter registration and related civic engagement efforts. (*Id.* ¶¶ 11-16.) They have brought this suit reluctantly, because efforts to work with the State to resolve

serious impediments to voting in Illinois have failed to remedy the State's violations of voter protection laws.

ISBE's motion to dismiss highlights the problem: the State's "chief election official" (as defined in the controlling statutes at issue here) is disclaiming that it has any legal responsibility for complying with federal and state election law. One can understand why ISBE might like that to be the law – we all would love to avoid responsibility for feeding the kids and taking out the trash some days, for example – but just as parents cannot avoid their responsibilities, ISBE cannot wave a wand and make its legal obligations disappear. The motion to dismiss must be denied.

## BACKGROUND

The NVRA creates a federal duty on the part of state and local governments to increase access to the "fundamental right" to vote. (Compl. ¶ 21.) Pursuant to the NVRA, each state must implement voter registration services that comply with the statute's requirements and designate a "chief election official," who is responsible for ensuring the state's compliance with those requirements. (*See id.* ¶ 18.) Illinois has assigned ISBE as its "chief election official," tasked with the partial responsibility for ensuring the state's compliance with the law (*Id.*)

As the State's chief election official, ISBE is obligated to remedy any non-compliance by the state of Illinois with the NVRA. (*Id.* ¶ 21.) And, as alleged in Plaintiffs' Complaint, the State's current process for offering voter registration violates the NVRA's requirements and frustrates Illinois citizens' ability to register to vote. (*Id.* at ¶ 43.) In particular, the State: (a) fails to provide voter registration to recently naturalized citizens obtaining Non-REAL IDs (*id*. ¶¶ 57-58, 101-104); (b) fails to provide applicants with the requisite NVRA disclosures (*id*. ¶¶ 59-63, 105-108); (c) fails to automatically update voter files for changes of address (*id*. ¶¶ 64-66, 109-112); and (d) requests duplicative information from applicants (*id*. ¶¶ 67-71, 113-116, 129-132). Pursuant to the

NVRA, Plaintiffs notified ISBE of the State's NVRA violations on December 13, 2018, and again on January 28, 2020. (*Id*. at ¶ 8.) ISBE did nothing to remedy these violations – but also, tellingly, did not disclaim that it is a legally responsible party for these violations. (*Id*. ¶ 5.)

In addition, ISBE holds joint responsibility with state agencies for ensuring Illinois' compliance with the AVR Statue—a statute which Illinois' voter registration system also violates. (*Id*. ¶ 20.) Illinois enacted AVR in 2017 with unanimous bipartisan support. One goal of the AVR Statute was to provide fair registration access to the over million eligible but unregistered voters in Illinois while also improving the accuracy and security of the state's voter rolls. (*Id*. ¶ 2.) Another goal of the Statute was to ensure compliance with, and expand the protections of, the NVRA. (*Id*. ¶¶ 2-3, 32.) The AVR Statute sets forth various requirements for voter registration activities conducted in Illinois (*id*. ¶ 34; *see also id*. ¶¶ 35-41) and mandates that: "The Office of the Secretary of State and the State Board of Elections, pursuant to an interagency contract and jointly-adopted rules, shall establish an automatic voter registration program that satisfies the requirements of this Section and other applicable law." 10 ILCS 5/1A-16.1(a). (*See* Compl. ¶ 20.)

As detailed in Plaintiffs' Complaint, Illinois' current process for offering voter registration violates the AVR Statute. (*Id.* at ¶ 43.) In particular, Illinois: (a) requests duplicative information from applicants (*id.* ¶¶ 67-71, 129-132); (b) fails to inform applicants about their voter registration status (*id*. ¶¶ 121-124); and (c) fails to properly evaluate and transfer relevant information between the Secretary of State (SOS) and ISBE (*id*. ¶¶ 81-82, 125-128). Plaintiffs notified ISBE of the State's AVR violations on December 13, 2018, and again on January 28, 2020. (*Id.* at ¶ 8.) Despite that notice, ISBE has yet to satisfy its obligation under the Statute to establish an AVR program that satisfies the requirements of the law. (*See id*. ¶ 5.)

3

Plaintiffs additionally allege that Defendants are violating Section 203 of the VRA, under which ISBE is required to provide translated materials to certain election jurisdictions. Section 203 concerns the provision of election materials to limited English proficient citizens. Pursuant to Section 203, any entity providing election materials to a covered jurisdiction must also provide limited English proficient voters within that jurisdiction with translated voting materials. (*Id.* ¶ 29.) In Illinois, jurisdictions covered by Section 203 include the City of Chicago and suburban Cook County for Spanish, Chinese, and Hindi and South Asian languages, as well as Kane and Lake Counties for Spanish. (*Id.* ¶ 31.) ISBE is an entity that provides materials relating to the electoral process within those covered jurisdictions, including during voter registration transactions through state government agencies such as the Secretary of State.[1] *See* 10 ILCS 5/1A-1; 10 ILCS 5/1A-16.6. (*See also* Ex. 1 (Illinois State Board of Elections, BOARD FUNCTIONS).)[2] Despite its legal obligations under the VRA, ISBE is currently failing to provide limited English proficient eligible voters in Cook, Kane, and Lake Counties translated materials relating to the electoral process. (Compl. ¶¶ 72-80, 117-120).

ISBE's refusal to remedy the violations at issue here hindered voter registration in the elections of November 2018, February 2019, April 2019, March 2020, and November 2020. (Compl. ¶ 55.) Each Plaintiff is harmed by ISBE's failure to comply with the law. (*Id.* ¶ 83.) As a result of Defendants' actions, Plaintiffs are forced to divert resources away from voter registration and related community education efforts to rectify Defendants' transgressions. (*Id.* ¶¶ 84-100.)

---

[1] Indeed, when one attempts to change their address through Driver Services' online portal, the applicant receives a message that change-of-address requests can also be submitted through the ISBE's website. *See* https://www.ilsos.gov/addrchange/AddrChangeController.

[2] *Available at* https://www.elections.il.gov/AboutTheBoard/BoardFunctions.aspx?MID=0FguA RZbd3I%3d&T=637311004876303451.

**LEGAL STANDARD**

ISBE's motion under Rule 12(b)(6) tests the sufficiency of the Complaint under the plausibility standard not the merits of the suit. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1105 (N.D. Ill. 2015). To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs' Complaint must merely "provid[e] allegations that raise a right to relief above the speculative level." *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015). "[A]ll this means is that the plaintiff must include enough details about the subject-matter of the case to present a story that holds together. At this pleading stage, [the Court does] not ask whether these things actually happened; instead, the proper question to ask is still could these things have happened." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (internal quotation marks and citation omitted). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the Complaint, and draws all reasonable inferences in Plaintiffs' favor. *Access Living of Metro. Chi., Inc. v. City of Chi.*, 372 F. Supp. 3d 663, 667 (N.D. Ill. 2019).

**ARGUMENT**

**I. PLAINTIFFS SUFFICIENTLY ALLEGE THEIR NVRA CLAIM AGAINST ISBE**

**A. ISBE is the State's chief election official and therefore a proper defendant.**

In moving to dismiss Plaintiffs' NVRA claim, ISBE ignores its statutory obligation to ensure the State's compliance with the statute. The NVRA requires states to designate an official "responsible for coordination of State responsibilities under [the NVRA]." 52 U.S.C. § 20509. This "chief election official" is responsible for ensuring the state's compliance with the law, and "the NVRA authorizes judicial intervention if a state fails to comply with its terms." *Harkless v. Brunner*, 545 F.3d 445, 450 (6th Cir. 2008). Illinois has designated ISBE in this role. The Illinois Constitution vests ISBE with "general supervision over the administration of the registration and

election laws throughout the state." Ill. Const. Art. III § 5; *see also* 10 ILCS 5/1A-1 ("[The] State Board of Elections is hereby established which shall have general supervision over the administration of the registration and election laws throughout the State."). Indeed, in communications to the Federal Election Assistance Commission, Illinois selected ISBE as the State's chief election official. (*See* Ex. 2 (Cong. Rsch. Serv., "The State and Local Role in Election Administration: Duties and Structures," at 12 (Mar. 4, 2019)).)[3]

Nonetheless, ISBE seeks to avoid its obligations by claiming that the Complaint contains "no allegation that ISBE failed in its duties" and solely concerns wrongdoing by the SOS. (*See* Dkt. No. 28 at 6.) That position is incorrect, as made clear by the plain text of the NVRA as well as the Complaint's allegations. (*See* Compl. ¶¶ 18, 21.) Courts have consistently held that a state's chief election official is responsible for ensuring the state's compliance with the NVRA and is therefore a proper party to any lawsuit alleging NVRA violations by the state. That is true even where the state has delegated actual voter registration duties to another agency or department.

In *Harkless v. Bruner*, for example, plaintiffs asserted an NVRA claim against the Ohio Secretary of State. The Secretary of State filed a motion to dismiss, arguing that because Ohio law had assigned voter registration services to the Ohio Department of Jobs and Family Services ("DJFS"), he was not a proper party to the lawsuit. 545 F.3d at 448-49. The district court granted the motion but on appeal the Sixth Circuit determined that the district court had erred in dismissing the Secretary of State from the action. *Id*. at 451-55. The court reasoned that because the text of the NVRA clearly assigns responsibility for NVRA enforcement to the state's "chief election

---

[3] In resolving ISBE's motion to dismiss, the Court may take judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies. *See 520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n.14 (7th Cir. 2008).

official," the Secretary of State, as Ohio's chief election official, was a proper party to the lawsuit despite the fact that Ohio had assigned voter registration duties to the DJFS. *See id*. at 451-55. Since *Harkless*, courts have consistently followed the Sixth Circuit's reasoning. *See, e.g.*, *Common Cause Ind. v. Lawson*, 327 F. Supp. 3d 1139, 1152 (S.D. Ind. 2018), *aff'd*, 37 F.3d 944 (7th Cir. 2019) (a state's chief election official is a proper defendant even where the actual voter registration duties have been delegated to other officials); *Am. Civ. Rts. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 792 (W.D. Tex. 2015) ("As the chief elections officer, the Texas Secretary of State has the power to enforce the NVRA and the 'ongoing role' of remedying NVRA violations."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 713 (S.D. Miss. 2014) ("The responsibility to ensure [NVRA compliance] thus ultimately falls on the State itself, and Hosemann as its chief election official."). Moreover, the Fifth Circuit held that the structure of the NVRA gives a state's chief election official authority to enforce compliance with the NVRA because, *inter alia*, the "requiring would-be plaintiffs to send notice to their chief election official about ongoing NVRA violations would hardly make sense if that official did not have the authority to remedy NVRA violations." *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014) (citation omitted). At minimum, the state's chief election official is at least partially responsible for state compliance with the NVRA even when voter registration services are designated to a different state agency. *See also Vladez v. Herrera*, No. 09-668 JCH/DJS, 2010 WL 11465061, at *9 (D. N.M. Dec. 21, 2010), *aff'd*, 676 F.3d 935 (10th Cir. 2012) (finding that New Mexico's Secretary of State, as the state's chief election official, was partially responsible for state compliance with the NVRA even though voter registration services were designated to a different state agency).

Here, ISBE cannot avoid its statutory duty to ensure the State's compliance with the NVRA by claiming that the NVRA violations at issue are solely the SOS's responsibility to remedy.

Regardless of which state agency actually conducts voter registration services,[4] ISBE, as the State's chief election official, is independently responsible for the State's NVRA violations. Thus, ISBE's assertion that the Complaint contains "no allegation that ISBE failed in its duties" is contradicted on the face of the Complaint and should be ignored. Plaintiffs sufficiently allege that ISBE is failing to meet its obligation to ensure the State's compliance with the NVRA. (*See* Compl. ¶¶ 57-71.) Moreover, Plaintiffs have alleged substantial, ongoing injuries by having to divert their limited organizational resources to help register eligible but currently-unregistered individuals caused by the State's failure, and that those injures are caused by *both* Defendants' noncompliance, not just the SOS's. (*See generally* Compl. ¶¶ 83-100.)

> B. **Because Plaintiffs' Complaint contains sufficient allegations against ISBE, Plaintiffs have standing to sue ISBE.**

ISBE's related challenge to Plaintiffs' standing—that their harm is not traceable to ISBE specifically—also fails. As discussed above, ISBE is the state election official charged with ensuring NVRA compliance in Illinois and is thus independently responsible for the harms arising from *any* non-compliance within the State.[5] *See Common Cause Ind.*, 327 F. Supp. 3d at 1152-53 ("The Defendants are the NVRA officials in the state and are responsible for the state's compliance with the NVRA . . . . Therefore, the injury in this case is fairly traceable to the named

---

[4] In this case, both Defendants are involved in providing voter registration services through Driver Services; for example, during change of address transactions through SOS's Driver Services, voters are informed: "You can register to vote at the Illinois State Board of Elections website using the Online Voter Registration Application." *See* https://www.ilsos.gov/addrchange/AddrChange Controller; *see also*, 10 ILCS 5/1A-16.6(a) ("State Board of Elections shall establish and maintain a portal for government agency registration that permits an eligible person to electronically apply to register to vote or to update his or her existing voter registration whenever he or she conducts business, either online or in person, with a designated government agency.").

[5] To the extent ISBE claims that Plaintiffs similarly lack standing to assert claims under the VRA and AVR Statute, for the reasons set forth below in Sections II and III, Plaintiffs' injuries are fairly traceable to ISBE's VRA and AVR Statute violations.

Defendants . . . . [and Plaintiff] has standing to proceed."). And plaintiffs have alleged that ISBE and SOS are jointly responsible for compliance with voter registration laws. (See Compl. ¶¶ 18-21.) As the State's chief election official, ISBE possesses the responsibility and authority to enforce the NVRA with respect to other state agencies, including the SOS. *See e.g.*, 10 ILCS 5/1A-8(2), (7) and (12) (Defendant ISBE is*, inter alia*, required to "supervise the administration of the registration and election laws throughout the State" and to "disseminate information" and "consult" about the "conduct of elections and registration in accordance with the laws of [Illinois] and the laws of the United States;" "review and inspect" procedures relating to voter registration; and "report violations of election laws"). Moreover, that the State has delegated some of its NVRA implementation responsibilities to the SOS does not diminish the fact that Plaintiffs' injuries stem from both Defendants' failure to ensure the State's compliance with the NVRA. *See Scott v. Schedler,* 771 F.3d 831, 838–39 (5th Cir. 2014) (Plaintiffs had standing to sue Louisiana's chief election official since it possessed the authority to enforce the NVRA with respect to other state agencies); *see also U.S. v. Mo.*, 535 F.3d 844, 846 n.1 (8th Cir. 2008) (plaintiffs had standing to sue Missouri's chief election official, even though the state had delegated some NVRA enforcement power to local officials); *see generally Madera v. Detzner,* 325 F. Supp. 3d 1269, 1276 (N.D. Fla. 2018) (noting the Secretary of State was Florida's chief election officer and "[t]his statutory job description is not window dressing").

Other provisions of the NVRA compel the same finding. The NVRA requires would-be plaintiffs to send notice to their chief election official about ongoing NVRA violations prior to filing suit. That requirement "would hardly make sense if that official did not have the authority to remedy NVRA violations." *Harkless*, 545 F.3d at 453. Thus, where the chief election official

9

fails to exercise its authority, as properly alleged here, plaintiffs have standing to compel the official to exercise such authority and remedy the State's NVRA violations.

In light of the foregoing—and Congress's clear intent to extend standing under the NVRA to the maximum allowable under the Constitution, *see Ass'n of Cmty. Orgs. For Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999) ("We conclude that although Congress did not explicitly define what it meant by an aggrieved person under the NVRA, it intended to extend standing under the Act to the maximum allowable under the Constitution.")—Plaintiffs have alleged an injury fairly traceable to ISBE and therefore have standing to sue. And because the Complaint otherwise contains sufficient allegations in support of Plaintiffs' NVRA claim against ISBE (*see* Compl. ¶¶ 57-71), the Court should deny ISBE's motion to dismiss that claim.

## II.  PLAINTIFFS SUFFICIENTLY ALLEGE THEIR VRA CLAIM AGAINST ISBE

ISBE argues that it is immune from Plaintiffs' claim under Section 203 of the VRA because "the complaint is devoid of an allegation that ISBE provid[es] the registration materials at issue." (Dkt. No. 28 at 7.) As an initial matter, ISBE misconstrues Plaintiffs' Complaint. The Complaint alleges that *both* the SOS and ISBE are responsible for the State's failure to provide limited English proficient voters with translated voting materials. (*See* Compl. ¶¶ 29-31, 77-80.) And as noted above, Defendant ISBE does provide voter registration during transactions through SOS's Driver Services, but does not translate them for covered jurisdictions.  At no point do Plaintiffs place the blame solely on the SOS, as ISBE claims Plaintiffs do. (*See id.* ¶ 77.)

In any event, pursuant to Illinois law, ISBE is responsible for providing voter registration materials across the State. *See* 10 ILCS 5/1A-1 ("[The] State Board of Elections is hereby established which shall have general supervision over the administration of the registration and election laws throughout the State."). Indeed, ISBE plays an active role in ensuring that state

10

agencies are provided voter registration materials and information relating to the electoral process, which those agencies in turn distribute to eligible voters. *See* 10 ILCS 5/1A-16.6. (*See also* Ex. 1 (stating that ISBE's functions include "[p]reparation and distribution of uniform manuals of instruction and other materials to election authorities").) Accordingly, ISBE is an entity that "[provides] registration or voting . . . materials or information relating to the electoral process" and is therefore subject to Section 203's obligations. *See* 52 U.S.C. § 10503(3)(A).

Moreover, the fact that the SOS rather than ISBE provides registration materials at Driver Services facilities (*see* Compl. ¶¶ 77-80) does not extinguish ISBE's obligation to provide translated materials in the first instance. Although Illinois assigns the SOS the function of providing registration materials at Driver Services facilities, Illinois has designated ISBE as the entity responsible for providing those materials to the SOS in the first instance. Given the historic coordination between the SOS and ISBE in distributing election material, allowing ISBE to escape liability whenever the SOS assumes the responsibility to provide materials directly to eligible voters would be in direct contradiction to the obligations set forth in Section 203.

In sum, due to ISBE's obligation to ensure compliance with Section 203, and Plaintiffs' well-pled allegation that ISBE has failed to meet that obligation (*see* Compl. ¶¶ 72-80, 117-120), Plaintiffs' VRA claim against ISBE should remain in this case. ISBE's argument to the contrary is without merit.

## III. PLAINTIFFS SUFFICIENTLY ALLEGE THEIR AVR CLAIM AGAINST ISBE

ISBE's arguments urging dismissal of Plaintiffs' claim under the AVR Statute are similarly unavailing. First, ISBE cannot invoke immunity under the Eleventh Amendment to evade liability in this case. Although sovereign immunity often bars claims against State officials in federal court, there are various exceptions to the doctrine. Most relevant here, the Eleventh Amendment bar is

inapplicable where federal law makes compliance with a state law a federal duty. *See Wis. Hosp. Ass'n v. Reivitz*, 820 F.2d 863, 868 (7th Cir. 1987). In that circumstance, sovereign immunity gives way and federal courts may exercise jurisdiction to force state officials to obey state law. *See id.*; *see also Barnes v. Cohen*, 749 F.2d 1009, 1019 (3d Cir. 1984) ("The [federal] statute explicitly requires state[s] [to comply with state law.] We read this federal law as requiring the state to adhere to its own regulations.").

As the Complaint makes clear (*see* Compl. ¶ 21), the NVRA creates a federal duty on the part of State and local governments "to promote the exercise of [the fundamental] right [to vote]." 52 U.S.C. § 20501(a)(2). In enacting the AVR Statute, Illinois sought to extend that federal duty to its fullest extent. (*See* Compl. ¶¶ 2-3, 32.) Indeed, many of the provisions of the Statute expressly overlap with the State's duties under the NVRA. *Cf.* 10 ILCS 5/1A-16.1(c) *with* 52 U.S.C. § 20504(c)(2)(C)-(D); 10 ILCS 5/1A-16.1(d) *with* 52 U.S.C. § 20504(c)(2). Accordingly, compliance with the AVR Statute falls within the ambit of the NVRA-mandated duty to promote the exercise of the right to vote and therefore this Court may exercise jurisdiction to require ISBE to meet its obligations under AVR. *See Wis. Hosp. Ass'n*, 820 F.2d at 868; *Barnes v. Cohen*, 749 F.2d at 1019-20.

Nor should the Court heed ISBE's alternative argument regarding Plaintiffs' AVR claim. In arguing that the AVR Statute does not regulate its conduct, ISBE misses the mark. Section (a) of the AVR Statute states: "The Office of the Secretary of State *and the State Board of Elections . . . shall* establish an automatic voter registration program that satisfies the requirements of this Section and other applicable law." 10 ILCS 5/1A-16.1(a) (emphasis added). In the context of statutory interpretation, the word "shall" creates a mandate not an option. *See Me. Cmty. Health Options v. U.S.*, 140 S. Ct. 1308, 1320 (2020) ("The first sign that the statute imposed an obligation

is its mandatory language: 'shall.' 'Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.'"); *see also People v. Ramirez*, 214 Ill.2d 176, 236 (2005) ("It is well established that, by employing the word 'shall,' the legislature evinces a clear intent to impose a mandatory obligation.").

Here, Plaintiffs' Complaint plausibly alleges that ISBE has failed to establish an automatic voter registration program that satisfies the requirements of the AVR Statute and other applicable law. (*See* Compl. ¶¶ 6, 122-32.) ISBE makes much of the fact that the specific requirements at issue in Plaintiffs' complaint (Sections (c) – (f) of the Statute) "direct[] the conduct of [the] SOS" rather than ISBE, but that fact is not relevant in the context of the joint obligations imposed by the AVR Statute. Pursuant to Section (a) of the Statute, *both* Defendants must establish a voter registration system that complies with Sections (c) through (f) of the Statute regardless of whose conduct is outlined in those provisions. As such, the AVR Statute regulates ISBE's conduct and ISBE is liable for its failure to satisfy its independent obligations under the Statute. To conclude otherwise despite the legislature's mandate that ISBE "shall establish" an AVR system that complies with all applicable law is to contravene the legislature's intent and frustrate the will of Illinois' citizens.

Lest any doubt remain, the legislative history of the Statute confirms that the Illinois Legislature sought to regulate ISBE's conduct. The General Assembly designed AVR with the understanding that ISBE would be subject to the law. (*See, e.g.*, Ex. 3 (100th General Assembly 38 (May 5, 2017)) (noting that the Statute would mandate ISBE to make technological upgrades so to convert Non-Real ID transactions to an electronic registration process).) Indeed, ISBE played an active role in writing the AVR Statute, even helping draft an amendment to the bill, the purpose of which was to ensure AVR implementation went "a bit smoother." (*See* Ex. 4 (100th General

Assembly 80-81 (May 31, 2017)).) It makes little sense for the General Assembly to seek ISBE's input regarding AVR implementation unless the Legislature had the expectation that ISBE would play a role in ensuring adequate implementation of the Statute once it passed.

In light of the above, the Court should deny ISBE's motion to dismiss Plaintiffs' claim under the AVR Statute.

## IV. PLAINTIFFS SHOULD BE GRANTED THE OPPORTUNITY TO AMEND

To the extent the Court grants ISBE's motion to dismiss, dismissal should be made without prejudice with leave to amend. "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, [a] district court should grant leave to amend after granting a motion to dismiss." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and N.W. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015); *see also Pennington v. Travelex Currency Servs., Inc.*, 114 F. Supp. 3d 697, 705 (N.D. Ill. 2015) ("[T]he Seventh Circuit has instructed that plaintiffs generally should be given at least one opportunity to cure deficiencies in a complaint that have been identified by the court."). Plaintiffs are prepared to file an amended complaint in the event the Court grants ISBE's motion to dismiss. Thus, dismissal should be without prejudice.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge the Court to deny ISBE's Motion to Dismiss Plaintiffs' Complaint.

Dated: October 26, 2020

Respectfully submitted,

*/s/ Charles F. Smith*
Charles F. Smith
Corbin Houston
155 North Wacker Drive
Chicago, IL 60606
Tel: 312.407.0700
charles.smith@skadden.com
corbin.houston@skadden.com

Aneel Chablani
Ami Gandhi
Jennifer Terrell
CHICAGO LAWYERS' COMMITTEE FOR CIVIL RIGHTS
100 N. LaSalle St., Suite 600
Chicago, IL 60602
Tel: 312.888.4193
achablani@clccrul.org
agandhi@clccrul.org
jterrell@clccrul.org

Niyati Shah (*pro hac vice* pending)
ASIAN AMERICANS ADVANCING JUSTICE | AAJC
1620 L St., NW, Suite 1050
Washington, DC 20036
Tel: 202.815.1098
nshah@advancingjustice-aajc.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2020, I served the foregoing Memorandum of Law in Support of Plaintiffs' Opposition to ISBE's Motion to Dismiss via the Court's electronic system on all attorneys of record who have entered an appearance by ECF in this proceeding.

*/s/ Charles F. Smith*