**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ASIAN AMERICANS ADVANCING | ) | |
| JUSTICE CHICAGO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01478 |
| | ) | |
| JESSE WHITE, | ) | |
| In his official capacity as the Illinois | ) | |
| Secretary of State, and ILLINOIS STATE | ) | |
| BOARD OF ELECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT ILLINOIS STATE BOARD OF ELECTIONS' REPLY TO PLAINTIFFS' RESPONSE TO ITS MOTION TO DISMISS

NOW COMES Defendant, Illinois State Board of Elections (ISBE or the Board), by and through its attorney, Kwame Raoul, Attorney General for the State of Illinois, and submits its reply to Plaintiffs' response to its motion to dismiss, stating as follows:

## INTRODUCTION

Defendant ISBE filed its Motion to Dismiss and supporting Memorandum of Law on July 1, 2020. Doc. 27, 28. Plaintiffs filed their response on October 26, 2020. Plaintiffs argue in their response that Defendant, as the State of Illinois' "chief election official" has, through its motion to dismiss, "disclaimed that it has any legal responsibility for complying with federal and state election law." Doc. 39 at 1. But Defendant ISBE does not argue it is not legally responsible for enforcing any election laws in the State of Illinois. Rather, Defendant ISBE argued in its motion to dismiss that 1) sovereign immunity bars some of Plaintiffs' claims; and 2) Plaintiffs failed to meet federal pleading standards. Plaintiffs' response does little to save its complaint. For the reasons stated *infra* and in Defendant ISBE's motion to dismiss, Plaintiffs' claims against

Defendant ISBE should be dismissed.

## ARGUMENT

### I.     The State of Illinois' sovereign immunity under the Eleventh Amendment bars several of Plaintiffs' claims.

Counts I-IV which are brought pursuant to the NVRA and Counts VI-VII which are brought pursuant to the AVR statute should be dismissed because they are barred due to State of Illinois' sovereign immunity. "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l Software, Inc.*, 653 F.3d 448, 457 (7th Cir. 2011). Plaintiffs' argument that this case falls within one of the exceptions to sovereign immunity fails.

### A.  None of the recognized exceptions to sovereign immunity exist in this case.

The Seventh Circuit addressed the exceptions to Eleventh Amendment immunity in *Indiana Protection & Advocacy Services v. Indiana Family and Social Services Administration*:

> There are three principal types of exceptions to the Eleventh Amendment's bar. First, a state may waive immunity by consenting to suit in federal court. Second, Congress may abrogate the state's immunity through a valid exercise of its powers under recognized constitutional authority, such as by later constitutional amendments. Third, under *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a plaintiff may file "suit[ ] against state officials seeking prospective equitable relief for ongoing violations of federal law . . . ."

603 F.3d 365, 370 (7th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

None of the recognized exceptions exist in this case. Here, the State of Illinois has not voluntarily consented to suit in this matter, and Plaintiffs have not so alleged. Further, Congress has not expressly overridden the State's immunity as to the NVRA or the AVR, and Plaintiff has made no allegation of the same.

The Supreme Court considers two factors "in order to determine whether Congress has abrogated the States' sovereign immunity: "first, whether Congress has unequivocally expressed

its intent to abrogate the immunity; and second, whether Congress has acted pursuant to a valid exercise of power . . . ." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996) (internal quotations omitted).

This Court's analysis can begin and end at the first inquiry as to both statutes. Congress included no "clear legislative statement," *id.*, in the text of the NVRA that expresses an intent to abrogate the Eleventh Amendment. The same can be said for the AVR: there is no clear legislative statement from the federal legislature of its intent to abrogate the Eleventh Amendment.[1] Without a clear statement of Congresses' intent to abrogate, the second exception does not apply as to Plaintiffs' claims against ISBE for violations of the NVRA and AVR.

Finally, while *Ex Parte Young* may afford Plaintiffs the opportunity to pursue Defendant SOS Jesse White in his official capacity, it does not apply as to Plaintiffs' suit against ISBE, a constitutionally-established agency of the State of Illinois. ILL. CONST. art. III, § 5; 10 ILCS 5/1A-1; *see also Kuna v. Illinois Bd. of Elections*, 821 F. Supp. 2d 1060, 1065 (S.D. Ill. 2011); *Smith v. Boyle*, 959 F. Supp. 982, 986 (C.D. Ill. 1997), *aff'd as modified*, 144 F.3d 1060 (7th Cir. 1998). For or the purpose of sovereign immunity, "[s]tate agencies are treated the same as states." *Kroll v. Bd. of Trustees of Univ. of Illinois*, 934 F.2d 904, 907 (7th Cir. 1991). If properly raised, the [Eleventh] amendment bars actions in federal court against a state [and] state agencies . . . ." *Indiana Prot. & Advocacy Services*, 603 F.3d at 370. Thus, the *Ex Parte Young* exception does not apply here.

Because none of the recognized exceptions to sovereign immunity exist in this case, the State of Illinois' immunity remains intact. Thus, Plaintiffs' claims as to the NVRA and the AVR are barred and must be dismissed. *See e.g. Pub. Interest Legal Found. v. Boockvar*, 431 F. Supp.

---

[1] The AVR was drafted by the Illinois State legislature, which would be unable to insert an unequivocal statement of the federal legislature's intent.

3d 553, 564 (M.D. Pa. 2019) (dismissing Pennsylvania's Bureau of Commissions, Elections and Legislation from NVRA suit under Eleventh Amendment); *Condon v. Reno*, 913 F. Supp. 946, 959 (D.S.C. 1995) (the court stated in an NVRA suit: "[i]f the private plaintiffs in [one of the consolidated cases], were suing the state directly, they would be barred by the Eleventh Amendment.").

**B. The Seventh Circuit has not created a new exception to sovereign immunity that could save Plaintiffs' claims brought pursuant to the AVR.**

Contrary to Plaintiffs' apparent assertion, the Seventh Circuit has never recognized an exception to sovereign immunity that "the Eleventh Amendment bar is inapplicable where federal law makes compliance with state law a federal duty." Doc. 39 at 12. Plaintiffs' reliance on *Wisconsin Hosp. Ass'n v. Reivitz*, 820 F.2d 863 (7th Cir. 1987), to support this unrecognized exception is misplaced; *Reivitz* does not create an exception to sovereign immunity which could save Plaintiffs' claims pursuant to the AVR from dismissal.

*Reivitz* arose as a challenge to a Wisconsin statute related to federal Medicaid reimbursements. States which participate in the federal Medicaid program are required to:

> adopt a plan approved by the U.S. Department of Health and Human Services that will assure reimbursement of hospitals at rates reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities.

*Id.* at 864. Additional federal regulations require the state agency that administers a state's medical assistance program to provide public notice and assurances of compliance with federal law whenever they make significant changes to Medicaid reimbursement rates. 45 C.F.R. § 205.5; *see also* 45 C.F.R. § 201.3. In July 1982, the United States District Court for the Eastern District of Wisconsin entered a consent decree settling a suit against two state officials in their official capacities wherein the Wisconsin Hospital Association challenged the methods by which the State of Wisconsin reimbursed members of the Association for services to Medicaid patients. *Reivitz*,

820 F.2d at 868. The decree ordered the State of Wisconsin not to deviate from its federally approved reimbursement plan "without complying with the procedural requirements set forth in the regulations." *Id.*

Despite the consent decree, the State of Wisconsin passed a statute postponing Medicaid reimbursement-rate increases without the required notice and without amending the federally approved state plan. *Id.* at 863. In response, the Wisconsin Hospital Association brought suit against Reivitz, the Secretary of the Wisconsin Department of Health and Social Services, in her official capacity and the Treasurer of the State of Wisconsin in his official capacity. *Id.* at 865. The plaintiff sought to "enjoin the Wisconsin statute on the grounds that it violated the federal Medicaid statute and regulations, impaired the obligations created by the state's contracts with . . . hospitals, and violated [the] consent decree entered in July 1982." *Id.* While the United States District Court expressed its belief the plaintiff's requested injunction was appropriate, it declined to grant the relief, citing sovereign immunity. *Id.*

On appeal, the United States Court of Appeals for the Seventh Circuit addressed an issue not present here: did the district court have the power to enforce the consent decree? Rather than create a new exception to Eleventh Amendment immunity, the court's reasoning fit squarely within established Eleventh Amendment jurisprudence. The court noted that the consent decree did not go against *Pennhurst*'s holding "that federal courts do not have jurisdiction to coerce state officials to obey state law," because "the federal regulations make compliance with the state plan (until amended, or unless the deviation is insignificant) a federal duty." *Id.* The court reasoned that the consent decree "did not engage the Eleventh Amendment" because it "settled a genuine, noncollusive case that was within the exception to the Eleventh Amendment that *Ex parte Young* created, and it was a proper settlement that didn't violate anybody's rights." *Id.* The Court reasoned

because the decree was "prospective in effect, based on federal law . . . and within the jurisdiction of the district court to enter notwithstanding the Eleventh Amendment or any other limitation on federal jurisdiction" the district court had jurisdiction to enforce compliance. *Id.*

In this case, Plaintiffs seek a declaration that Defendants have violated a state statute, request an injunction ordering Defendants to comply with a state statute, and request a court-approved plan which would force future compliance with state law. Any of those remedies, if granted as to Defendant ISBE, would completely ignore state sovereignty. *Reivitz* does not advocate for such a result. In *Reivitz*, the court determined that the federal district court had authority to enforce the consent decree because the decree compelled officials in the State of Wisconsin to comply with federal guidelines. At no point did the court instruct Wisconsin on how to follow Wisconsin law.

The AVR is not a federally-approved plan for following the NRVA or a consent decree based on federal law. It is a state law and "a federal court lacks subject-matter jurisdiction to compel a state agency to adhere to state law." *Bates v. Johnson*, 901 F.2d 1424, 1428 (7th Cir. 1990). Thus, Plaintiff's claims pursuant to the AVR must be dismissed.

## II. That Defendant ISBE's constitutionally established role as general supervisor over the administration of voter registration does not negate Plaintiffs' responsibility to follow federal pleading standards.

Plaintiffs make it clear from the language of the complaint that this lawsuit is focused on conduct for which Defendant SOS is responsible. Plaintiffs allege that the SOS "delayed implementation of the AVR statute multiple times" without explanation, (Doc. 1 at ¶ 5), and that after "nearly two years' worth of efforts to *engage SOS and collaborate on proper implementation*" of the NVRA and AVR, they brought suit. *Id.*

Plaintiffs go on to allege that this action seeks to "correct" both defendant**s** (plural) "wrongs

and to ensure that those who wish to exercise their fundamental right to vote may do so." *Id.* What is missing from the complaint is what "wrongs" Defendant ISBE allegedly committed. In the "Factual Allegations" section of the complaint, which contains 58 paragraphs, Plaintiffs mention Defendant ISBE only four times. Each time is in reference to Defendant ISBE's role as the recipient of information from Defendant SOS. None of those references include a specific allegation of wrongdoing against Defendant ISBE. As Defendant ISBE argued in its motion to dismiss, Plaintiffs' complaint is devoid of factual allegations against Defendant ISBE and thus, dismissal is warranted. This contention remains unrebutted.

Throughout their response to Defendant's motion, Plaintiffs seem to argue that their claims as to Defendant ISBE should survive dismissal because Defendant ISBE has election-related responsibilities under Illinois law. The argument is as follows: because Defendant ISBE is Illinois' designated chief election official under the NVRA, an allegation that an election-related statute has been violated, even if a separate entity committed the violation, is sufficient to state a claim against Defendant ISBE. This logic does not hold. Defendant's role in the State of Illinois government does not negate federal pleading standards. Plaintiffs were required to state factual allegations that support their claim that Defendant ISBE violated the applicable statutes and they failed to do so.

A federal complaint must allege details about the claim sufficient to give the defendant fair notice as to basis of the claim. *See* Fed. R. Civ. P. 8(a)(2); *Tamayo v. Blaojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Rule 8 does not require specific facts, but plaintiffs are required to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardu*s, 551 U.S. 89, 93 (2007). Plaintiffs provide numerous facts in their complaint— there are allegations about allegedly improper procedures at SOS facilities, conduct of SOS employees,

issues with SOS technology— but none of the allegations give Defendant ISBE fair warning of what wrongdoing Plaintiffs are asserting against *ISBE*.

The mere fact that Defendant ISBE has election-related duties under Illinois law does not make it an automatic target for any election-related suit. A plaintiff must, as in any suit, state a claim upon which relief can be granted against the chosen defendant. As Plaintiffs have not specifically stated claims for violation of the NVRA, VRA, or AVR against Defendant ISBE, their claims should be dismissed.

### III. Plaintiff failed to state a claim against state agency Defendant ISBE for violation of the NVRA.

Plaintiffs' argument that Defendant ISBE is a proper defendant because it is the State's chief election official responds to an argument Defendant ISBE did not make. The Defendant does not argue that it has delegated its responsibilities under the NVRA to another party and thus cannot be sued under the NVRA. Rather, Defendant argues that Plaintiffs failed to allege how Defendant ISBE violated the statute. Plaintiffs' allegations pursuant to the NVRA contain precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusations" the Supreme Court has warned against. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs have pled no failings on behalf of Defendant ISBE, so their claims must be dismissed.

Plaintiffs rely on the United States Court of Appeals Sixth Circuit case *Harkless v. Bruner*, 545 F.3d 445 (6th Cir. 2008), but that case does not address Defendant's position. In *Harkless*, the plaintiffs brought suit against the Ohio Secretary of State in her official capacity and the Director of the Ohio Department of Jobs and Family Services in his official capacity. The Ohio Secretary of State filed a motion to dismiss, arguing that he was not a proper party defendant in the litigation "because under Ohio law, the power of implementing the NVRA provisions regarding voter registration of those receiving public assistance lies" with county-run Department of Jobs and

Family Services offices. *Harkless v. Blackwell*, 467 F. Supp. 2d 754, 762 (N.D. Ohio 2006). The defendant Secretary of State further asserted that the fact that plaintiffs alleged that counties were not complying with the NVRA was insufficient to state a claim against the Secretary of State. *Id.* The district court granted the Secretary of State's motion to dismiss. *Id.* at 756.

The United States Court of Appeals for the Sixth Circuit reversed on appeal. *Harkless v. Brunner*, 545 F.3d 445, 459 (6th Cir. 2008). The court refused to put the onus on local governments and instead held that the state is responsible for compliance with the NVRA:

> The Secretary argues that once the state designates an office as a VRA, her responsibility ends, and it is up to the designated office to carry out the remaining tasks. According to this view, *if every state passed legislation delegating NVRA responsibilities to local authorities, the fifty states would be completely insulated from any enforcement burdens, even if NVRA violations occurred throughout the state*.

> However, the entire Act, including other subsections, *speaks in terms of state responsibilities; what is noticeably missing is any mention of county, municipal, or other local authorities*. Indeed, Congress grafted the NVRA onto the existing public assistance structure, under which the fifty states, not their political subdivisions, have the ultimate accountability. Accordingly, the better interpretation of the statute reads these two provisions together—that each state shall designate voter registration agencies, and that each state shall ensure that the agencies complete the required tasks.

*Id.* at 452. (emphasis added).

The defendant Secretary of State's argument in *Harkness* was different than the arguments set forth here by Defendant ISBE. The *Harkness* defendant sought to be removed from the suit because he believed that county officials were responsible for implementing procedures designed to comply with the NVRA. Defendant ISBE does not deny that it has a duty to implement the NVRA. Rather, Defendant ISBE simply argues that Plaintiffs have not alleged that it has failed in its duty to implement procedures designed to comply with the NVRA. *Harkness* does not save Plaintiffs' claims because it does not address Defendant's argument.

Further, *Harkness* does not stand for the proposition that the chief election official is a

necessary party in *every* NVRA suit, because the court was not asked to address that issue. The Sixth Circuit reached its conclusion because it read the NVRA as a statute which governs states, not local governments. While *Harkness* is not precedential here, Defendant ISBE's motion to dismiss is not contrary to that court's conclusion. Defendant makes no attempt to deflect responsibility to a local government. If Defendant were dismissed from this litigation, the State of Illinois, by and through SOS in his official capacity, remains a defendant in this case.

## IV. Plaintiffs fail to state a claim against ISBE pursuant to the Voting Rights Act.

As for the VRA, Plaintiffs attempt to save their claim by pointing out that Defendant ISBE has "general supervision over the administration of the registration and election laws" in Illinois and that one of its roles is to prepare and distribute "uniform manuals of instruction and other materials to election authorities." Doc. 39-2. That Defendant ISBE distributes election-related materials to local election authorities[2] does not automatically make it responsible for the particular materials at issue in Plaintiffs' complaint. It is not enough to simply allege that Defendant ISBE has some responsibilities related to certain election materials; Plaintiffs were required to provide factual allegations to support their claim that Defendant ISBE failed to meet its duty pursuant to the VRA. They failed to do so.

Section 203 of the VRA states that "[b]efore August 6, 2032, no covered State or political subdivision shall provide voting materials only in the English language." 52 U.S.C.A. § 10503(b)

---

[2] The term "election authority" are defined in the Illinois Election Code as "a county clerk or a Board of Election Commissioners." 10 ILCS 5/1-3 (8) (West 2020). Also, on Defendant ISBE's website, "election authorities" are defined as "county clerks in 101 counties, one county election commissions [sic] and 6 municipal election commissions." Illinois State Board of Elections Website, *Election Authorities*, https://elections.il.gov/electionoperations/electionauthorities.aspx (last visited Nov. 9, 2020) This Court may take judicial notice of the information on Defendant ISBE's website. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites."). Given the statutorily-set definition of the term, the Secretary of State is not an "election authority" to which Defendant ISBE distributes election-related materials.

(West 2020). The section further states:

> Whenever any State or political subdivision[3] subject to the prohibition of subsection (b) . . . provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable minority group as well as in the English language.

*Id.* As Plaintiffs note in their complaint, in Illinois, "covered jurisdictions" in Illinois include the City of Chicago, suburban Cook County, Kane County, and Lake County. Compl. ¶ 31. Plaintiffs allege Defendants ISBE and Secretary of State conduct voter registration in these covered jurisdictions. Compl. ¶ 76. But that is the only allegation in Plaintiffs' complaint that both mentions Defendant ISBE's conduct and is related to the VRA.

In the section titled "Defendants Do Not Sufficiently Provide Voter Registration in Covered Languages," Plaintiffs bring allegations regarding SOS personnel's failure to translate oral questions regarding voter registration (Doc. 1 at ¶ 77), the lack of appropriate translations on electronic pinpads at SOS facilities (*id.* at ¶ 78), and the failure to have visible signage relating to at SOS facilities in the applicable minority languages (*id.* at ¶ 79). Plaintiffs do not state in their complaint, nor do they point out in their response, how Defendant ISBE is to blame for these issues: they bring no factual allegations to suggest that Defendant ISBE has the ability to direct SOS employees to speak in certain languages (it does not), that Defendant ISBE has the ability ensure SOS provides translated materials on electronic pinpads in SOS facilities (it cannot), or that Defendant ISBE can provide and then subsequently place in plain view signage at SOS facilities that is translated into applicable minority languages (it does not and cannot). The allegations in

---

[3] The plain language of the VRA offers nothing to suggest that a state's chief election official is a necessary party to a suit for violations thereof. The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). The inquiry must end "if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotations omitted).

Plaintiffs' complaint are not directed at ISBE as to any VRA violation.  Thus, Plaintiff's claims pursuant to the VRA should be dismissed.

## CONCLUSION

For the foregoing reasons and those stated in Defendant ISBE's motion to dismiss and accompanying memorandum, Defendant ISBE requests the grant of its motion to dismiss.


Respectfully submitted,

ILLINOIS STATE BOARD OF ELECTIONS,

Defendant,

KWAME RAOUL, Attorney General,
State of Illinois,

Kristina Dion (6312732)                          Attorney for Defendant,
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701              By:     s/Kristina Dion
(217) 782-5819 Phone                             KRISTINA DION
E-Mail: kdion@atg.state.il.us                    Assistant Attorney General
            gls@atg.state.il.us

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ASIAN AMERICANS ADVANCING JUSTICE-CHICAGO et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01478 |
| | ) | |
| JESSE WHITE, | ) | |
| In his official capacity as the Illinois | ) | |
| Secretary of State, and ILLINOIS STATE | ) | |
| BOARD OF ELECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020, the foregoing document, ***DEFENDANT ILLINOIS STATE BOARD OF ELECTIONS' REPLY TO PLAINTIFFS' RESPONSE TO ITS MOTION TO DISMISS***, was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| **Charles F. Smith** | **charles.smith@skadden.com** |
| **Michael Tomczyk** | **michael.tomzyk@skadden.com** |
| **Corbin Houston** | **corbin.houston@skadden.com** |
| **Aneel Chablani** | **achablani@clccrul.org** |
| **Ami Gandhi** | **agandhi@clccrul.org** |
| **Jennifer Terrell** | **jterrell@clccrul.org** |
| **Niyati Shah** | **nshah@advancingjustice-aajc.org** |
| **Michael Dierkes** | **mdierkes@atg.state.il.us** |

Respectfully submitted,

By:     s/Kristina Dion
Kristina Dion #6312732
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 782-5819 Phone
(217) 524-5091 Fax