IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASIAN AMERICANS ADVANCING JUSTICE-CHICAGO, et al.<br><br>Plaintiff,<br><br>v.<br><br>JESSE WHITE, in his official capacity as the Illinois Secretary of State, and the ILLINOIS STATE BOARD OF ELECTIONS,<br><br>Defendants. | Case No. 1:20-cv-01478<br><br>Hon. Charles R. Norgle |

## ORDER

The motion by Defendant Illinois State Board of Elections to substitute counsel [47] is granted. The Board's motion to dismiss [27] is granted. Even though the Court granted Plaintiffs' unopposed motion to hold the briefing schedule on Defendant Illinois Secretary of State Jesse White's motion to dismiss, the Court finds that Plaintiffs' state law claims under the Illinois Election Code are barred by the Eleventh Amendment. Accordingly, the Secretary of State's motion to dismiss [23] is granted. As a result, Plaintiffs' motion for an extension of time to respond to the Secretary of State's motion to dismiss [49] is denied as moot.

## STATEMENT

Plaintiffs[1] filed this lawsuit against the Illinois Secretary of State, Jesse White, and the Illinois State Board of Elections for violations of section 5 of the National Voter Registration Act, 52 U.S.C. § 20504 (Counts I, II, III, and IV), section 203 of the Voting Rights Act, 52 U.S.C. § 10503 (Count V), and section 1A-16.1 of the Illinois Election Code (Counts VI, VII, and VIII). Dkt. 1. Now before the Court are Defendants' motions to dismiss. Dkt. 23, 27.

According to Plaintiffs' complaint, the Secretary of State is responsible for offering voter registrations during certain covered transactions related to driver's licenses. Dkt. 1 at ¶ 42. Plaintiffs allege that the process implemented by Secretary of State personnel for offering voter registration during those covered transactions frustrates Illinois citizens' ability to register to vote and violates the Voter Registration Act, the Voting Rights Act, and the Election Code. Dkt. 1 at ¶ 43. Specifically, Plaintiffs allege that Secretary of State personnel often do not inform driver's

---

[1] Plaintiffs include Asian Americans Advancing Justice-Chicago, Change Illinois, Chicago Votes Education Fund, Common Cause Illinois, Illinois Coalition for Immigrant and Refugee Rights, and Illinois Public Interest Research Group Education Fund.

license applicants about their voter registration status and address as required by the Election Code. Dkt. 1 at ¶¶ 48, 62, 121-24. Similarly, Plaintiffs allege that the Secretary of State's system fails to prompt personnel to ask non-REAL ID driver's license renewal applicants about voter registration, even if the applicant is a recently naturalized citizen, which Plaintiffs claim violates section 5 of the Voter Registration Act. Dkt. 1 at ¶¶ 58-63, 101-08. Additionally, allege Plaintiffs, when an individual submits a change of address application for their driver's license, Defendants fail to automatically update individuals' voter registration address, again purportedly in violation of section 5 of the Voter Registration Act. Dkt. 1 at ¶¶ 64-66, 109-12. Further, Plaintiffs allege that Secretary of State personnel request duplicative information, like age verification and signatures, which Plaintiffs assert violates the Voter Registration Act and the Election Code. Dkt. 1 at ¶¶ 67-71, 113-16, 129-32. Plaintiffs also allege that Secretary of State personnel fail to fully and comprehensively translate or interpret questions about voter registration to covered languages in covered jurisdictions, which Plaintiffs claim violates section 203 of the Voting Rights Act. Dkt. 1 at ¶¶ 72-80, 117-20. Finally, Plaintiffs allege that the Secretary of State does not properly evaluate or review information that it submits to the Board, resulting in the Board improperly receiving information on individuals who opted out of automatic voter registration or who are not eligible to vote by reason of citizenship or age, which Plaintiffs claim violates the Election Code. Dkt. 1 at ¶¶ 81-82, 125-28.

The Board moves to dismiss Plaintiffs' complaint, first noting that Plaintiffs' complaint contains no particularized allegations against it or relating to its conduct. As a result, the Board argues that Plaintiffs' complaint should be dismissed for lack of standing because Plaintiffs have not identified any injury that is traceable to their injuries. The Court agrees. "[T]he 'irreducible constitutional minimum' of standing consists of three elements:" Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Ibid. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)). While "the fairly traceable standard is not equivalent to a requirement of tort causation," it is nevertheless "designed to ensure that the injury complained of is not the result of the independent action of some third party." Nader v. Democratic Nat'l Comm., 555 F. Supp. 2d 137, 149-50 (D.D.C. 2008) (cleaned up).

Plaintiffs resist the Board's characterization of their complaint's absence of allegations of any conduct by the Board by arguing that *any* injury to Plaintiffs that results from a violation of the Voter Registration Act is fairly traceable to the Board because, as Plaintiffs allege in their complaint, the Board is the state election official charged with ensuring compliance with the Voter Registration Act in Illinois. Common Cause Ind. v. Lawson, 327 F. Supp. 3d 1139 (S.D. Ind. 2018), which, as Plaintiffs note, held that the plaintiff had standing to proceed against the co-directors of the Indiana Election Division who were responsible for the Indiana's compliance with the Voter Registration Act by establishing guidelines, policies, and procedures for maintaining the state's voter registration rolls, is distinguishable from Plaintiffs' case in significant respects. There, the plaintiff sought and received a preliminary injunction prohibiting the co-directors to take any action to implement the Indiana state law at issue on the basis that doing so was likely to violate the Voter Registration Act. Id. at 1153. Thus, the threatened actions of the defendants to implement the state law gave rise to the plaintiff's threatened injury, diversion of resources. Id. at 1152.

That is not so here. Plaintiffs' complaint makes no allegations whatsoever about the Board's past or threatened conduct aside from the bare bones allegation that the Board is tasked

with ensuring compliance with the Voter Registration Act. Rather, the substance of Plaintiffs' complaint challenges only the actions (or inaction) of the Secretary of State. Plaintiffs do not allege, for example, that the Board has taken any action that contributed to the Secretary of State's conduct or that the Board is legally obligated in some way to correct the Secretary of State's failures and has failed to do so. As a result, the Court concludes that Plaintiffs' have failed to establish that any injury they allege is fairly traceable to any conduct by the Board. Therefore, Plaintiffs have failed to establish standing to sue the Board so the Court dismisses Plaintiffs' complaint as to the Board under Federal Rule of Civil Procedure 12(b)(1).

The Board also argued in its motion to dismiss that Plaintiffs' state law claims under the Election Code are barred by the Eleventh Amendment. Though the Court need not reach that argument in the Board's motion because the Court has found that Plaintiffs failed to allege standing to sue the Board, the Court notes that the Secretary of State's partial motion to dismiss exclusively raises the same Eleventh Amendment argument. The Court granted Plaintiffs' unopposed motion to hold the briefing schedule on the Secretary of State's motion in abeyance pending the parties' settlement negotiations. Nevertheless, the Court finds that the Secretary of State's Eleventh Amendment argument requires that the Court dismiss Plaintiffs' state law claims under the Election Code. The Court finds that Plaintiffs' will not be unduly prejudiced by not having an opportunity to respond to the Secretary of State's motion for several reasons. First, the Court granted Plaintiffs six extensions of time for Plaintiffs to respond to the Secretary of State's motion, though Plaintiffs responded to the Board's motion after four, which included a response to the Board's Eleventh Amendment argument that is identical to the Secretary of State's. Additionally, while the Court granted Plaintiffs' unopposed motion to hold the briefing schedule on the Secretary of State's motion in abeyance pending the parties' settlement negotiations nearly two months ago, the Court has received no updates on the status of the parties' settlement negotiations since. Further, especially in light of Plaintiffs' response to the Board's identical Eleventh Amendment argument, the Court finds that the caselaw interpreting the Eleventh Amendment and the exceptions to the states' immunity from suit in federal court under it demands that Plaintiffs' state law claims under the Election Code be dismissed. Moreover, as the Secretary of State notes in its motion, while the Eleventh Amendment "does not strictly involve subject matter jurisdiction and is thus waivable, . . . a court may raise the issue itself." Ind. Protection & Advocacy Servs. v. Ind. Family & Social Servs. Admin., 603 F.3d 365, 370 (7th Cir. 2010).

Under the Eleventh Amendment, "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Ind. Protection & Advocacy Servs., 603 F.3d at 370. "Notwithstanding the phrase 'Citizens of another State' the Supreme Court 'has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Ibid. (quoting Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)).

That general rule would by itself preclude Plaintiffs' entire case, but there are three types exceptions to the states' Eleventh Amendment immunity from suit in federal court. "First, a state may waive immunity by consenting to suit in federal court." Id. at 371. That exception does not apply here, as the Secretary of State (and, for that matter, the Board) have asserted the Eleventh Amendment and there is no indication that Illinois has otherwise waived its Eleventh Amendment immunity by, for example, state law. A second type of exception exists where Congress abrogates "the state's immunity through a valid exercise of its powers under recognized constitutional authority, such as by later constitutional amendments." Ibid. Like the exception for states that

waive immunity by consenting to suit in federal court, the Court finds that Congress has not abrogated the states' Eleventh Amendment immunity as to state law claims related to voter registration. Finally, the third type of exception was recognized in Ex parte Young, 209 U.S. 123 (1908), for suits against state officials seeking prospective equitable relief for ongoing violations of federal law. Ibid.

In response to the Board's Eleventh Amendment argument, Plaintiffs' claim that the Voter Registration Act creates a federal duty for state and local governments to promote the exercise of the fundamental right to vote and, by extension, created a federal duty for state and local governments to comply with state law. In making that argument, Plaintiffs relied on Wis. Hosp. Ass'n v. Reivitz, 820 F.2d 863 (7th Cir. 1987). In Reivitz, the Seventh Circuit held that the plaintiffs avoided an Eleventh Amendment problem in their action against Wisconsin state officials because the plaintiffs sought to enforce the terms of a consent decree in an earlier case against the state officials that was permissible under the Ex parte Young exception. Reivitz, 820 F.2d at 868. How Reivitz applies to this case is unclear to the Court. Plaintiffs appear to argue that the Voter Registration Act federalized state law through its finding that "it is the duty of the Federal, State, and local governments to promote the exercise of [the] right [to vote]." 52 U.S.C. § 20501(a)(2). But the Court finds that Congress's recognition that state and local governments have a duty to promote the exercise of the right to vote is merely a finding to justify the enactment of the Voter Registration Act and does not federalize every minute aspect of state law related to voter registration. And that conclusion is not undercut by the fact that many provisions of the Election Code overlap with the requirements of the Voter Registration Act.

"A court applying the Ex parte Young doctrine now need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Ind. Protection & Advocacy Servs., 603 F.3d at 371 (cleaned up). Though Plaintiffs' complaint seeks only prospective injunctive relief, the Court finds that Plaintiffs' state law claims under the Election Code do not fall within the Ex parte Young exception because those claims are for allegedly ongoing violations of state law, not federal law. Accordingly, the Court grants the Secretary of State's motion to dismiss Plaintiffs' state law claims under the Election Code. The Court notes, however, that the Secretary of State did not move to dismiss and instead answered Plaintiffs' federal claims under the Voter Registration Act and the Voting Rights Act.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 25, 2021

4